**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

TYLEE DODSON #428-941          *

        Plaintiff,                    *

        v.                            *          CIVIL NO.: PX-19-1824

C. O. N. WAGWU ET AL.          *

        Defendants.                   *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**</u>

      Defendants, Defendants Gideon Nwagu, Olusegun Ade-Ayeni, Purnell Owens, Albert Taylor and Kayode Adejuwon (hereinafter "Defendants"), by their attorneys, Brian E. Frosh, Attorney General of Maryland, and Damon A. Pace, Assistant Attorney General, respectfully submit this in support of their Motion to Dismiss, file and state this Memorandum of Law and states as follows:

<u>**INTRODUCTION**</u>

      Plaintiff Tylee Dodson filed a complaint in this matter on June 20, 2019. ECF 1. The plaintiff identifies as a transgender woman.  ECF 1-1, pp. 1-2.  In her complaint, she made seven claims alleging: 1) that defendant Ade-Yeni denied her the opportunity to buy feminine-related items at the commissary, and that he made anti-gay/trans comments to her; 2) that defendant Adejuwon "targeted" her for punishment at some unspecified date and time; 3) that defendant Nwagwu spit in her food on April 8, 2019, and that he was not at his assigned post of L3 at 9:30 a.m., on April 4, 2020, thus endangering her safety; 4) that defendant Owens issued a "confiscation" as a result of a shakedown on March 28, 2019, and that he ordered  a strip search on November 6, 2018; 5) unidentified actions against defendant Taylor, presumably for

supervisory liability; and 6) overall dissatisfaction with conditions at Patuxent Institution (hereinafter "PI"). As relief, plaintiff seeks financial compensation in the form of $500 per day for the entirety of her stay at PI. ECF 1-1.

This Court should dismiss the complaint, or enter summary judgment in favor of the defendants, because the plaintiff fails to state a claim upon which relief can be granted and has not exhausted her administrative remedies prior to filing suit. This Court should dismiss the case, or enter summary judgment in favor of the defendants, for the reasons which follow.

## STATEMENT OF FACTS

The plaintiff alleged on August 31, 2018, that defendant Ade-Yeni denied her the opportunity to purchase feminine items on "numerous occasions" at the commissary. ECF 1-1. Nowhere within the Complaint does the plaintiff identify the feminine items that she was denied the opportunity to purchase. The Department of Public Safety and Correctional Services (hereinafter "DPSCS") regulates what inmates may purchase from the commissary, and further makes distinctions between what male and female inmates may purchase. DPSCS Executive Directive "Inmate Personal Property," effective date December 31, 2016, specifically stipulates what male and female inmates may purchase and in what quantities. Exh. 1, DPSCS' "Inmate Personal Property" Executive Directive. A review of the "Allowable Inmate Property Matrix," an appendix within the "Inmate Personal Property" document, reveals that female inmates are allowed to purchase up to seven (7) bras, while male inmates are not allowed to purchase any. Exh. 1 at Appendix 1. Similarly, female inmates are allowed to purchase one pair of earrings, while male inmates are denied this purchase. *Id*.

However, DPSCS Executive Directive "Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria," maintains that an inmate "[w]hose assigned gender is male and expressed gender is female and who is housed in a male facility is permitted to purchase and retain clothing items and other articles authorized for other male inmates at the facility, as well as items authorized for females at a female facility." Exh. 2, DPSCS' "Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria" as Section K-2(a). Being unaware of this policy, Defendant Ade-Yeni mistakenly refused the purchase of female items to the plaintiff, but not as an intentional deprivation as he was not aware of the plaintiff's gender designation. Exh. 3, Declaration of Olesegun Ade-Yeni. Defendant Ade-Yeni has also stated that he has not verbally abused or otherwise discriminated against the plaintiff during her incarceration at PI. *Id*. at p.2. Moreover, the plaintiff has not identified any harm or injury that she suffered as a result of not being allowed to purchase female-related items.

Concerning defendant Owens, a sergeant with DPSCS, the plaintiff alleged that he ordered a strip search on November 6, 2018, for no valid basis. ECF 1-1. Defendant Owens recalled the incident and in response has stated that he received intelligence that the plaintiff had illegally received contraband from another inmate while in the cafeteria. Exh. 4, Declaration of Pernell Owens, at p.1. Based upon the intelligence he received, defendant Owens ordered two subordinates to conduct a strip search of the plaintiff. *Id*. The strip search was conducted as a result of credible information that was received and not done to harass or harass the plaintiff. *Id*.

The plaintiff has also alleged that defendant Owens conducted a "shake down" on March 28, 2019, and confiscated personal property. ECF 1-1. In response, Defendant Owens has stated

that during a search of plaintiff's cell, contraband and other illegal items were observed and confiscated. Exh. 4, at p.1. As a result, the plaintiff was issued a Notice of Confiscation for the items that were seized. *Id.* The search of the plaintiff's cell and seizure of contraband was legal and valid, and not done to harass or demean the plaintiff. *Id.*

The plaintiff has also alleged that defendant Nwagwu spit into her food tray that he served her on April 8, 2019, and that he was absent from his post at L3 at 9:30 a.m. on April 4, 2019, thus endangering her safety. ECF 1-1. The plaintiff did not observe defendant Nwagwu spit into her food tray, but believes him to be responsible. *Id.* Defendant Nwagwu has stated that he has no recollection of serving the plaintiff a food tray on April 8, 2019. Exh. 5, Declaration of Gideon Nwagwu, at p. 1. Regardless, defendant Nwagwu has stated under the penalty of perjury that he has never spit into the food tray of the plaintiff, nor any other inmate at PI. *Id.* Defendant Nwagwu also refutes the plaintiff's regarding being absent from his post at L3 at 9:30 a.m., on April 4, 2019, and maintains that he was, in fact, present at that location. *Id.*

## I.    Standard of Review

## A.    Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997). Such a motion should be granted when the plaintiff has failed to plead facts that plausibly suggest that he is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Indeed, the plaintiff must make allegations that "allow[] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The court, however, need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.      Motion for Summary Judgment**

A motion for summary judgment may be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S.at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256.

In *Celotex Corp.,* the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324. However, "a mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. N. Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966) *aff'd,* 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Based upon this standard, the pleadings and exhibits, the defendants are entitled to summary judgment.

## II.      Argument

### A.      The Eleventh Amendment Bars this Suit Against the Defendants in Their Official Capacity.

It is well established that the Eleventh Amendment bars any suit in federal court, absent consent, against a state by its own citizens. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) (observing that "[t]he ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court.") It is likewise well-established that the Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*).

Also barred by the Eleventh Amendment are claims brought against state employees in their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. ... .' *Pennhurst,* 465 U.S. 101-

02 (citations omitted). The defendants in this case, therefore, are, immune from suit in federal court in their official capacity and the claims against them in their official capacity should be dismissed outright.

> **B.    By Alleging Insufficient and Conclusory Facts, the Plaintiff Has Failed to State a Viable Legal Claim for a Violation of Her Constitutional Rights.**

**1. Defendant Ade-Yeni's refusal to allow Plaintiff to purchase feminine items.**

The plaintiff has alleged that defendant Ade-Yeni refused to allow her to purchase feminine items from the commissary on several occasions. ECF 1-1 at pp. 3-4. Nowhere does the plaintiff identify the items that she was denied the purchase of. In response, defendant Ade-Yeni has stated that he followed and applied the terms of the "Inmate Personal Property" Executive Directive (Exh. 1), which specifies the items, and in what quantities, male and female inmates may purchase with regard to the plaintiff. Exh. 3 at p. 1. A review of the "Allowable Inmate Property Matrix," an appendix within the "Inmate Personal Property" document, reveals that female inmates are allowed to purchase up to seven (7) bras, while male inmates are not allowed to purchase any. Exh. 1 at Appendix 1. Similarly, female inmates are allowed to purchase one pair of earrings, while male inmates are denied this purchase. *Id.* Being aware of this policy, Defendant Ade-Yeni did not allow the plaintiff to purchase items that were designated for females as he believed the plaintiff to be a male. Exh. 3 at p. 1.

However, DPSCS Executive Directive "Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria," maintains that an inmate "[w]hose assigned gender is male and expressed gender is female and who is housed in a male facility is permitted to purchase and retain clothing items and other articles authorized for other male inmates at the facility, as well as items authorized for females at a female

7

facility."  Exh. 2, DPSCS' "Identification, Treatment and Correctional Management of an Inmate Diagnosed with Gender Dysphoria" as Section K-2(a).  Defendant Ade-Yeni mistakenly refused the purchase of female items to the plaintiff, but not as an intentional deprivation as he was not aware of the plaintiff's gender designation, as per Exh. 3.  Moreover, the plaintiff has not identified any harm or injury that she suffered as a result of not being allowed to purchase female-related items.  Mere negligence is not enough to establish liability under the Eight Amendment.  *Rich v. Bruce*, 129 F.3rd 336, 338 (4th Cir. 1997).

Plaintiff has also alleged that defendant Ade-Yeni has made derogatory and anti-gay/trans comments to her.  ECF 1-1 at p. 2.  Defendant Ade-Yeni has denied making discriminatory comments to the plaintiff.  Exh. 3.  Defendant Ade-Yeni has also stated that he has not verbally abused or otherwise discriminated against the plaintiff during her incarceration at PI.  *Id*. at p.2.  Threats by correctional officers to inmates, without more, do not state a claim.  *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990) *aff'd,* 917 F.2d 1302 (4th Cir. 1990).  Likewise, verbal harassment and aggravating language, without more, do not amount to a constitutional violation.  *See Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973).

Regarding the alleged verbal threats, plaintiff has failed to state a constitutionally protected claim. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998); *accord Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right" under §1983); *see*

*also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Cole*, 633 F.2d at 1091.  Defendant is entitled to judgment as to this claim.

Accordingly, the plaintiff's allegations against defendant Ade-Yeni should be dismissed.

## 2. Claims against Defendant Owens

The plaintiff has alleged that defendant Owens issued a "confiscation" as a result of a shakedown on March 28, 2019, and that he ordered a strip search on November 6, 2018.

Strip-searching inmates is not *per se* unconstitutional. The fact that on a single occasion an officer not involved in the search witnessed the inmate naked does not state a claim. *See Lee v. Downs*, 641 F.2d 1117, 1121 (4th Cir. 1981).  Here, defendant Owens has stated that he received credible information that the plaintiff was in possession of illegal contraband that she received while in the cafeteria.  Exh. 4 at p.1.  The strip search was conducted based upon this intelligence, and not done to harass or demean the plaintiff.  *Id*.  The plaintiff has offered no basis or rationale for a violation of her constitutional rights.

The plaintiff further alleged that defendant Owens conducted a "shake down" on March 28, 2019, and confiscated personal property.  ECF 1-1.  In response, defendant Owens has stated that during a search of plaintiff's cell, contraband and other illegal items were observed and confiscated.  Exh. 4, at p.1.  As a result, the plaintiff was issued a Notice of Confiscation for the items that were seized.  *Id*.  The "Inmate Personal Property" Executive Directive defines contraband as:

(a)    "Contraband" means an item, material, substance, or other thing that:

(i)    Is not authorized for inmate possession by a managing official;

9

    (ii)   Is not permitted in a correctional facility as established by statute, regulation or prohibited by the managing official;

    (iii)   Is brought into a correctional facility in a manner prohibited by the managing official; or

    (iv)   Exceeds the quantity of the item, material, substance, or other thing that the managing official has authorized an inmate to possess.

(b)    "Contraband" includes, but may not be limited to:

    (i)   An alcoholic beverage;

    (ii)   A controlled dangerous substance;

    (iii)   An unauthorized telecommunication device; and

    (iv)   A weapon.

Exh. 1 at pp. 2-3.

    Based upon a routine search of the plaintiff's cell, several contraband items were identified and seized from the plaintiff. Exh. 4. Defendant Owens' actions were legal and valid, and not done in a discriminatory fashion towards the plaintiff. *Id.*

### 3. Allegations against Defendant Nwagwu.

    The plaintiff alleged that defendant Nwagwu was not at his assigned post of L3 at 9:30 a.m., on April 4, 2020, thus endangering her safety. ECF 1-1, pp. 13-14. Also, plaintiff alleges that Defendant Nwagwu spit in her food tray on April 8, 2019 (ECF 1-1, pp. 24-25). Importantly, the plaintiff did not actually see defendant Nwagwu spit into her food tray, but believes that he did it as he served her the tray. *Id.*

    Defendant Nwagwu has stated that he has no recollection of serving the plaintiff a food tray on April 8, 2019. Exh. 5, Declaration of Gideon Nwagwu, at p. 1. Regardless, defendant

10

Nwagwu has stated under the penalty of perjury that he has never spit into the food tray of the plaintiff, nor any other inmate at PI. *Id.* Defendant Nwagwu also refutes the plaintiff's regarding being absent from his post at L3 at 9:30 a.m., on April 4, 2019, and maintains that he was. in fact, present at that location. *Id*.

The plaintiff's bald and vague allegations against defendant defendant Nwagwu should also be dismissed as well. "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted. *See D*ove v. Fordham Univ.*, and *Hall v. Bellmon, supra.* The standard of sufficiency for federal pleadings demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

### 4. Plaintiff's allegations against Defendant Adejuwon.

The plaintiff has made a vague allegation that defendant Adejuwon intentionally "targeted" her for punishment at some unspecified date and time. ECF 1-1, at p. 8. Further, the plaintiff has failed to identify the "punishment" that she allegedly experienced. *Id.* Based upon this lone and utterly ambiguous allegation, there can be no liability against defendant Adejuwon. "Absent actual personal participation in the alleged violation, the claims fails to allege a basis for the Defendants' liability." *See Trulock v. Freeh,* 275 F. 3d 391, 402(4th Cir. 2001).

### 5. Plaintiff Has Failed To Allege Unconstitutional Conditions Of Confinement At PI.

The plaintiff alleges a variety of infractions and irregularities concerning the conditions at PI, including that officers are not at their assigned posts; and an overall dissatisfaction with prison life at PI. ECF 1. The plaintiff does not identify any correctional officer or individual concerning

11

her complaints and does not state any harm that she has experienced as a result of his allegations. *Id*. To the extent that plaintiff's general claims assert that the defendants violated their policies and procedures, a bald allegations of state law or regulatory violations do not provide a basis for a procedural due process claim. *See Weller v. Department of Social Services,* 901 F.2d 387, 392 (4th Cir. 1990).

To state a constitutional cause of action requires that some facts be alleged the regarding the defendants, showing some basis for the allegation of constitutional delinquency. In the absence of such facts, the *pro se* complaint should be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). As *Twombly* expounded, and *Iqbal* confirmed, the standard of sufficiency for federal pleadings demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *See Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). A complaint must pass a plausibility test that asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Thus, in cases like this one, where plaintiff has not nudged their claims across the line from conceivable to plausible, his complaint must be dismissed. *See Twombly*, 550 U.S. at 1974.

Even if plaintiff's pro se complaint, when liberally construed, is sufficient to allege a claim of unconstitutional conditions of confinement, plaintiff still cannot prevail. To state a claim that prison conditions violate the Constitution, the deprivations alleged must be "unquestioned and serious." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only those conditions that "deprive inmates of the minimal civilized measure of life's necessities," *i.e.*, that involve the wanton and unnecessary infliction of pain, or that constitute extreme deprivations grossly disproportionate to the severity of the crime, amount to cruel and unusual punishment. *Hudson v. McMillian*, 503

12

U.S. 1, 8-9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"). Conditions that are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

To make out a claim that prison conditions amount to cruel and unusual punishment, an inmate must have suffered actual, serious harm from the challenged conditions. The Eighth Amendment does not prohibit cruel and unusual conditions, but prohibits cruel and unusual punishments. "If a prisoner has not suffered serious or significant physical or mental injury[1] as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the amendment." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (double bunking, lack of exercise and inadequate ventilation, without evidence of actual harm, not cruel and unusual punishment). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Id. See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (inmate required to go three days without shower after having had excrement thrown on him by other inmates but who was given materials to clean

---

[1] Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), an inmate cannot sue for damages for emotional or mental injury in the absence of evidence of physical injury. Even prior to the PLRA, when emotional harm may have been legally cognizable standing alone, the standard of proof for such harm was high. To demonstrate a significant emotional injury arising out of alleged unconstitutional conditions of confinement, the plaintiff had to show serious mental and emotional deterioration attributable to the conditions and illustrate that the anxieties interfered with his everyday functions. "A depressed mental state, without more, does not rise to the level of the 'serious or significant physical or emotional injury' that must be shown to withstand summary judgment on an Eighth Amendment charge." *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d at 472 (quoting *Strickler*, 989 F.2d at 1381). "The mere incantation of 'physical and mental injury,' of course, is inadequate to survive a motion for summary judgment. At a minimum, an inmate must specifically describe not only the injury but also its relation to the allegedly unconstitutional condition." *Strickler*, 989 F.2d at 1381 n.9.

13

himself and his cell was not entitled to a presumption of actual harm). *See, e.g.*, *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471-72 (4th Cir. 1999) (administrative segregation with 23-hour lockup, no radio or TV, five hours of exercise a week, and exclusion from all programs did not violate the Eighth Amendment because it did not deny a "basic human need"; "A depressed mental state, without more, does not rise to the level of the 'serious or significant physical or emotional injury' that must be shown" under the Eighth Amendment); *Kirby v. Blackledge*, 530 F.2d 583, 586-87 (4th Cir. 1976) (cell with no bedding, no light, and a hole in the floor for a toilet violated the Eighth Amendment); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that filthy, vermin-infested, and flooded conditions, with unbearably hot cells, cold food, and smaller portions, no clean clothing or bedding, no outdoor recreation, etc., for six months were not atypical and significant); *Chavarria v. Stacks*, 102 F. App'x 433 (5th Cir. 2004) (24 hour illumination that interferes w/ sleep did not state claim where necessary for security). A remedy for unsafe conditions, however, need not await until a tragic event occurs, but rather an inmate must suffer from the *reasonable* fear of assault resulting in *significant* mental pain. *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985) (emphasis added); *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (citing *Rhodes*, 452 U.S. at 352).

In determining whether to grant relief, the court should ascertain: "(1) whether there is a pervasive risk of harm to inmates from other prisoners, and, if so, (2) whether the officials are exercising reasonable care to prevent prisoners from intentionally harming others or from creating an unreasonable risk of harm." *Woodhouse v. Com. of Va.*, 487 F.2d 889, 890 (4th Cir. 1973). "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated

incidents." *Shrader*, 761 F.2d at 978 (quoting *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir. 1980)).

In addition to the objective element discussed above, a claim of unconstitutional conditions of confinement also requires a subjective element.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka*, 71 F.3d at 166 (emphasis in original; citation omitted). To have a sufficiently culpable state of mind, the defendants must have acted with deliberate indifference to the allegedly unconstitutional conditions. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d at 472; *Strickler*, 989 F.2d at 1379. A finding of deliberate indifference requires that the defendant both "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837. Moreover, the conditions must be so severe that the defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.,* 447 F.3d 292, 313 (4th Cir. 2006).

Here, in the instant matter, the plaintiff has offered nothing to substantiate the subjective element of establishing that officials at PI acted with a "sufficiently culpable state of mind." Accordingly, this Court should dismiss the suit as to these defendants.

### 6. Supervisory Liability

There is no *respondeat superior* liability under § 1983. *Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978). Therefore, supervisory correctional officials can be held liable

only for their own personal wrongdoing or for supervisory actions that themselves violate constitutional norms. To establish supervisory liability in a § 1983 action in general, the Fourth Circuit has held that it must be shown:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994)(citations omitted). *See also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir, 1984), *cert. denied*, 470 U.S. 1035 (1985).

Deliberate indifference, in this context as in any other, is more than mere negligence: "Generally, a failure to supervise gives rise to a § 1983 liability, however, only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to supervisory personnel. A single act or isolated incident are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983)(citations omitted).

Nowhere within plaintiff's Complaint does she make any allegations against defendant Taylor. As such, it can be readily deduced that defendant Taylor, a lieutenant, is the highest ranking named defendant, and that he was only named in the Complaint under a theory of supervisory liability or for deliberate indifference. As such, defendant Taylor is entitled to dismissal or alternatively judgment in her favor.

16

D.        **Plaintiff Has Failed To Exhaust Her Administrative Remedies.**

Plaintiff has failed to exhaust her administrative remedies.  To the extent that plaintiff's general claim asserts that the defendants violated their policies and procedures with regard to the processing of her grievances, bald allegations of state law or regulatory violations do not provide a basis for a procedural due process claim. *See Weller v. Department of Social Services,* 901 F.2d 387, 392 (4th Cir. 1990). Moreover, inmates do not have a constitutionally protected right to a grievance procedure. *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994).  Accordingly, no claim has been stated and this Court should dismiss the complaint or enter summary judgment in favor of the defendants.

Plaintiff will not succeed on the merits because, if this suit amounts to a suit under 42 U.S.C. sec. 1983, it is barred by the Prison Litigation Reform Act.  Plaintiff cannot prevail on the merits because the defendants are entitled to a dismissal as a matter of law because plaintiff failed to exhaust the administrative remedies prior to filing suit.  Plaintiff filed suit on June 20, 2019. ECF 1.

The Prison Litigation Reform Act (PLRA) 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856-58 (2016); *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The Supreme Court has emphasized that *proper* exhaustion of administrative remedies is required. *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Proper" exhaustion means "using all steps that the agency holds out and, doing so *properly* (so that the agency addresses the issues on the

17

merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds) (a Section 1983 action, citing numerous cases).

Exhaustion of the administrative remedies that are made available is also mandatory by State law and Department of Public Safety & Correctional Services (DPSCS) regulations.  See Md. Ann. Code, Corr. Serv. Ar. §10-201 *et seq.* (1999); Md. Cts. & Jud. Proc. Code Ann., §5-1001, *et seq.* In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the Administrative Remedy Procedure (hereinafter "ARP") process. *See* COMAR to 12.02.28.05(d)(1). The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *See* COMAR 12.02.28.09(B). If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of the Division of Correction. *See* COMAR 12.02.28.14(B)(5). An inmate filing a request for formal resolution of an inmate complaint may appeal to the Commissioner a procedural dismissal on preliminary review of the Request form. *See*, Md. Code Regs. 12.02.28.14.A.(1). If the appeal is denied, the inmate has 30 days to file a grievance with the Inmate Grievance Office. *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; COMAR 12.02.28.18. Complaints are reviewed preliminarily by the IGO. *See* Md. Code Ann., Corr. Servs. §10-207; COMAR 12.07.01.06(A). If

18

a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. *See* Md. Code Ann., Corr. Servs. § 10-207(b)(1); *See* COMAR 12.07.01.06(B). The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. *See* Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* Md. Code Ann., Corr. Servs § 10-208; COMAR 12.07.01.07(A)(3). The conduct of such hearings is governed by statute. *See* Md. Code Ann., Corr. Servs § 10-208. A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. *See* Md. Code Ann., Corr. Servs. § 10-209(b)(ii). However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* Md. Code Ann., Corr. Servs. § 10-209(b)-(c). The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* Md. Code Ann., Corr. Servs. § 10-210.

If the managing official fails to provide a response within the established time requirements an inmate may appeal to the Commissioner. COMAR 12.02.18.14.A.(2). The appeal is to be filed within thirty days of the date that the managing official's response was due to the inmate. COMAR 12.02.18.14.B.(5)(c). An inmate may seek review by the Inmate Grievance Office according to procedures under COMAR 12.07.01 of a decision by the Commissioner or the failure of the Commissioner to file a response to an appeal within the time frame established under §A of

Regulation .17 of Chapter 28 Administrative Remedy Procedures to Resolve Inmate Complaints. COMAR 12.02.28.18.

In the present matter, Cornae Shields, the Administrative Remedy Coordinator at PI, has stated under oath that a search of available records did not produce an ARP appeal for any of the actions or allegations cited in his Complaint.  Exh. 6, Declaration of Cornae Shields. The plaintiff referenced seven (7) ARPS in his Complaint (ECF 1-1): 1) PATX 0499-18 (which relates to allegations against defendant Ade-Yeni), ECF 1-1, pp. 3-4; 2) PATX 0178-19 (inability to purchase hygiene products), *Id*. at p. 10; 3) PATX 0194-19 (allegations concerning defendant Owens and the confiscation of items), *Id.* at p. 12; 4) PATX 0195-19 (cruel treatment at PI), *Id*. at p. 11; 5) PATX  0201-19 (allegation that defendant Nwagwu was not at his assigned post), *Id*. at p. 15; 6) PATX 0204-19 (sexual assault by another inmate), *Id.* at p. 19; and 7) PATX 0205-19 (allegation against defendant Nwagwu), *Id.* at p. 24.

The plaintiff did not appeal any of the above-referenced 7 ARPs that she cited in her Complaint.  Exh. 6. Based upon the plaintiff's failure to exhaust her administrative remedies, plaintiff's claims should be dismissed.

### E.     Qualified Immunity

Even if this Court were to find a violation of plaintiff's constitutional rights occurred, the defendants are entitled to summary judgment on the basis of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (alteration in original). The qualified immunity inquiry is "assessed in light of the legal rules that

were 'clearly established at the time the action was taken.'" *Id.* Plaintiff must show more than that the right violated was clearly established in a general sense, but must "demonstrate that the particular actions" at issue "were unlawful under the law established at the time of the incident." *S.P. v. City of Takoma Park*, 134 F.3d 260, 266 (4th Cir. 1998) (citations omitted); see also *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (Powell, J.) ("[T]he proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."). In plain terms, a public official must "appreciate that he was violating" a plaintiff's asserted rights when he takes the action in question to be denied qualified immunity. *Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007). Moreover, because the main purpose animating the qualified immunity doctrine is to prevent "insubstantial claims" against government officials from proceeding to discovery, the question of immunity should be decided at "the earliest possible stage in litigation." *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (citations omitted).

Here, the plaintiff has failed to allege that any of the defendants' actions "were unlawful under the law established at the time of the incident." *S.P. v. City of Takoma Park*, *supra*, at p. 266. Defendants were authorized to search and confiscate illegal contraband from the plaintiff. There is no evidence of widespread abuse to impose supervisory liability. Defendants did not engage in unconstitutional activity nor is there clearly established law under these facts to put a reasonable officer on notice that they were violating plaintiff's rights. Defendants are entitled to dismissal of the complaint or in the alternative summary judgment in their favor.

### F.  Conclusion

For the foregoing reasons, the defendants respectfully request that this Court dismiss the complaint against them or in the alternative, grant summary judgment in their favor

21

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland


                    /s/
_____
Damon A. Pace
Assistant Attorney General
Federal Bar No. 29939
St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6587 (Telephone)
(410) 576-6880 (Telefax)
E-mail: dpace@oag.state.md.us

Attorneys for Defendants

22